1 | PAUL L. REIN, Esq. (SBN 43053)
CELIA McGUINNESS, Esq. (SBN 159420)
2 | LAW OFFICES OF PAUL L. REIN
200 Lakeside Dr., Suite A
3 | Oakland, CA 94612
Tel. 510/832 5001
4 | Fax 510/832-4787
reinlawoffice@aol.com

5

Attorneys for Plaintiff
6 | ANDI MILLARD

7

THEODORE E. BACON, Esq. (SBN 115395)
8 | ADORNO, YOSS, ALVARADO & SMITH
1 MacArthur Place, Suite 200
9 | Santa Ana, CA 92707
Tel. 714/852-6800
10 | Fax 714/852-6899

11 | Attorneys for Defendant
J.P. MORGAN CHASE BANK, N.A.
12

13 | BRIAN O'GRADY, Esq. (SBN 77622)
GAZZERRA, O'GRADY & STEVENS
14 | 1134 West El Camino Real
Mountain View, CA 94040
15 | Tel. 650/968-9612
Fax 650/968-1627
16

Attorneys for Defendant LAURA-LOU, INC.
17 | dba CLARKE'S CHARCOAL BROILER, and
METROPOLITAN LIFE INSURANCE COMPANY
18

19 |                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
20

| 21 | ANDI MILLARD, | CASE NO. C07-06014 MMC |
|----|---------------|------------------------|
| 22 | Plaintiff, | Civil Rights |
| 23 | v. | |
| 24 | LAURA-LOU, INC. dba CLARKE'S CHARCOAL BROILER; | CONSENT DECREE AND [PROPOSED] ORDER |
| 25 | METROPOLITAN LIFE INSURANCE COMPANY; J. P. MORGAN CHASE | |
| 26 | BANK, N.A., as successor in interest to WASHINGTON MUTUAL BANK, FA; | |
| 27 | and DOES 1-10, Inclusive, | |
| 28 | Defendants. | |

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 830-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C07-06014 MMC

S:\GM\Cases\C\Clarke's\Pleadings\consent decree.wpd

1    1.    Plaintiff ANDI MILLARD filed a Complaint in this action on
2    November 28, 2007, to obtain recovery of damages for her discriminatory
3    experiences, denial of access, and denial of her civil rights, and to enforce
4    provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.
5    §§ 12101 *et seq.*, and California civil rights laws against Defendants LAURA-
6    LOU, INC., dba CLARKE'S CHARCOAL BROILER, and METROPOLITAN
7    LIFE INSURANCE COMPANY, relating to the condition of their public
8    accommodations as of Plaintiff's visit on or about April 20, 2007, and continuing.
9    Plaintiff has alleged that Defendants violated Title III of the ADA and sections
10   51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and sections 19955 *et*
11   *seq.* of the California Health & Safety Code by failing to provide full and equal
12   access to their facilities at Clarke's Charcoal Broiler, 615 El Camino Real,
13   Mountain View, California. She filed a First Amended Complaint on July 22,
14   2008, adding defendant WASHINGTON MUTUAL BANK, FA. She filed a
15   Second Amended Complaint on April 10, 2009, adding J. P. MORGAN CHASE
16   BANK, N.A., as successor in interest to WASHINGTON MUTUAL BANK, FA.

17   2.    Defendants LAURA-LOU, INC., dba CLARKE'S CHARCOAL
18   BROILER, METROPOLITAN LIFE INSURANCE COMPANY and J. P.
19   MORGAN CHASE BANK, N.A. deny the allegations in the Complaint and by
20   entering into this Consent Decree and Order do not admit liability to any of the
21   allegations in Plaintiff's Complaint filed in this action. The parties hereby enter
22   into this Consent Decree and Order for the purpose of resolving this lawsuit
23   without the need for protracted litigation and without the admission of any
24   liability.

25

26   **JURISDICTION:**

27   3.    The parties to this Consent Decree and Order agree that the Court
28   has jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C07-06014 MMC                          -2-                    S:\CM\Cases\C\Clarke's\Pleadings\consent decree.wpd

1  violations of the Americans with Disabilities Act of 1990, 42 U.S.C.

2  sections 12101 *et seq.* and pursuant to supplemental jurisdiction for alleged

3  violations of California Health & Safety Code sections 19955 *et seq.;* California

4  Civil Code sections 51, 52, 54, 54.1, 54.3, and 55; and Title 24, California Code

5  of Regulations.

6  4.   In order to avoid the costs, expense, and uncertainty of protracted

7  litigation, the parties to this Consent Decree and Order agree to entry of this

8  Order to resolve all claims regarding injunctive relief raised in the Complaint

9  filed with this Court. Accordingly, they agree to the entry of this Order without

10  trial or further adjudication of any issues of fact or law concerning Plaintiff's

11  claims for injunctive relief.

12  WHEREFORE, the parties to this Consent Decree and Order hereby

13  agree and stipulate to the Court's entry of this Consent Decree and Order, which

14  provides as follows:

15

16  **SETTLEMENT OF INJUNCTIVE RELIEF:**

17  5.   This Order shall be a full, complete, and final disposition and

18  settlement of Plaintiff's claims against Defendants for injunctive relief that have

19  arisen out of the subject Complaint. The parties agree that there has been no

20  admission or finding of liability or violation of the ADA and/or California civil

21  rights laws, and this Consent Decree and Order should not be construed as such.

22  6.   The parties agree and stipulate that the corrective work will be

23  performed in compliance with the standards and specifications for disabled

24  access as set forth in California Code of Regulations Title 24-2, and the

25  Americans with Disabilities Act Accessibility Guidelines, unless other standards

26  are specifically agreed to in this Consent Decree and Order.

27  a)   **Remedial Measures:** The corrective work agreed upon by

28  the parties is attached here to as Attachment A, the report of Jonathan Adler.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. O07-06014-MMC                                    -3-                          S:\Cb:\C:ases\C\Clarke's\Pleadings\consent decree.wpd

1   Defendants agree to undertake all of the remedial work set forth therein.

2           b)      **Timing of Injunctive Relief:**  Defendants will submit plans

3   for all corrective work to the appropriate governmental agencies within 30 days

4   of the entry of this Consent Decree and Order by the Court. If the City of

5   Mountain View should deny permits for any of the remediation proposed, then

6   defendants will provide equivalent access conforming to Title 24.   Defendants

7   will commence work within 30 days of receiving approval from the appropriate

8   agencies. Defendants will complete the work within 30 days of commencement.

9   Work neither requiring permits nor dependent upon permitted work will be

10  completed within 60 days of entry of this Consent Decree and Order by the

11  Court. In the event that unforeseen difficulties prevent Defendants from

12  completing any of the agreed-upon injunctive relief, Defendants or their counsel

13  will notify Plaintiff's counsel in writing within 15 days of discovering the delay.

14  Defendants or their counsel will notify Plaintiff's counsel when the corrective

15  work is completed, and in any case will provide a status report no later than 120

16  days from the entry of this Consent Decree and Order.

17

18  **DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:**

19          7.      The parties have not reached an agreement regarding Plaintiff's

20  claims for damages, attorney fees, litigation expenses and costs. These issues

21  shall be the subject of further negotiation, litigation, and/or motions to the Court.

22

23  **ENTIRE CONSENT ORDER:**

24          8.      This Consent Decree and Order and Attachment A to this Consent

25  Decree and Order which is incorporated herein by reference as if fully set forth in

26  this document, constitute the entire agreement between the signing parties on the

27  matters of injunctive relief, and no other statement, promise or agreement, either

28  written or oral, made by any of the parties or agents of any of the parties that is

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C07-06014 MMC                    -4-                    S:\CM\Cases\C\Clarke's\Pleadings\consent decree.wpd

1  not contained in this written Consent Decree and Order shall be enforceable
2  regarding the matters of injunctive relief described herein. This Consent Decree
3  and Order applies to Plaintiff's claims for injunctive relief only and does not
4  resolve Plaintiff's claims for damages, attorney fees, litigation expenses and
5  costs, which shall be the subject of further negotiation and/or litigation.

6

7  **CONSENT DECREE AND ORDER BINDING ON PARTIES AND**
8  **SUCCESSORS IN INTEREST:**

9        9.      This Consent Decree and Order shall be binding on Plaintiff ANDI
10  MILLARD; Defendants LAURA-LOU, INC., dba CLARKE'S CHARCOAL
11  BROILER; METROPOLITAN LIFE INSURANCE COMPANY;  J. P.
12  MORGAN CHASE BANK, N.A. and any successors in interest. The parties
13  have a duty to so notify all such successors in interest of the existence and terms
14  of this Consent Decree and Order during the period of the Court's jurisdiction of
15  this Consent Decree and Order.

16

17  **MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS**
18  **TO INJUNCTIVE RELIEF ONLY:**

19        10.  ·   Each of the parties to this Consent Decree and Order understands
20  and agrees that there is a risk and possibility that, subsequent to the execution of
21  this Consent Decree and Order, any or all of them will incur, suffer or experience
22  some further loss or damage with respect to the lawsuit which are unknown or
23  unanticipated at the time this Consent Decree and Order is signed. Except for all
24  obligations required in this Consent Decree and Order, the parties intend that this
25  Consent Decree and Order apply to all such further loss with respect to the
26  lawsuit, except those caused by the parties subsequent to the execution of this
27  Consent Decree and Order. Therefore, except for all obligations required in this
28  Consent Decree and Order, this Consent Decree and Order shall apply to and

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C07-06014 MMC                               -5-                        S:\CM\Cases\C\Clarke's\Pleadings\consent decree.wpd

1  cover any and all claims, demands, actions and causes of action by the parties to
2  this Consent Decree and Order with respect to the lawsuit, whether the same are
3  known, unknown or hereafter discovered or ascertained, and the provisions of
4  Section 1542 of the California Civil Code are hereby expressly waived. Section
5  1542 provides as follows:

6  **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
7  WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
   TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING
   THE RELEASE, WHICH IF KNOWN BY HIM OR HER
8  MUST HAVE MATERIALLY AFFECTED HIS OR HER
   SETTLEMENT WITH THE DEBTOR.**
9

10  This waiver applies to the injunctive relief aspects of this action only and does
11  not include resolution of Plaintiff's claims for damages, attorney fees, litigation
12  expenses and costs.

13       11.    Except for all obligations required in this Consent Decree and Order,
14  and exclusive of the referenced continuing claims for damages, statutory attorney
15  fees, litigation expenses and costs, each of the parties to this Consent Decree and
16  Order, on behalf of each, their respective agents, representatives, predecessors,
17  successors, heirs, partners and assigns, releases and forever discharges each other
18  Party and all officers, directors, shareholders, subsidiaries, joint venturers,
19  stockholders, partners, parent companies, employees, agents, attorneys, insurance
20  carriers, heirs, predecessors, and representatives of each other Party, from all
21  claims, demands, actions, and causes of action of whatever kind or nature,
22  presently known or unknown, arising out of or in any way connected with the
23  lawsuit.

24

25  **TERM OF THE CONSENT DECREE AND ORDER:**

26       12.    This Consent Decree and Order shall be in full force and effect for a
27  period of twelve (12) months after the date of entry of this Consent Decree and
28  Order, or until the injunctive relief contemplated by this Order is completed,

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C07-06014 MMC                    -6-                    S:\CM\Cases\C\Clarke's\Pleadings\consent decree.wpd

1 │ whichever occurs later. The Court shall retain jurisdiction of this action to
2 │ enforce provisions of this Consent Decree and Order for twelve (12) months after
3 │ the date of this Consent Decree and Order, or until the injunctive relief
4 │ contemplated by this Consent Decree and Order is completed, whichever occurs
5 │ later.

6

7 │ **SEVERABILITY:**

8 │     13.     If any term of this Consent Decree and Order is determined by any
9 │ court to be unenforceable, the other terms of this Consent Decree and Order shall
10 │ nonetheless remain in full force and effect.

11

12 │ **SIGNATORIES BIND PARTIES:**

13 │     14.     Signatories on the behalf of the parties represent that they are
14 │ authorized to bind the parties to this Consent Decree and Order. This Consent
15 │ Decree and Order may be signed in counterparts and a facsimile signature shall
16 │ have the same force and effect as an original signature.

17

18 │ Dated: May ⁄5⃞, 2009             PLAINTIFF ANDI MILLARD

19

20

21                                    ANDI MILLARD

22 │ Dated: May 21, 2009             DEFENDANT LAURA-LOU,
                                     INC., dba CLARKE'S CHARCOAL BROILER
23

24

25                                    By: _____

26 │ //

27 │ //

28 │ //

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C07-06014 MMC                    -7-                    S:\CM\Cases\C\Clarke's\Pleadings\consent decree.wpd

1  Dated: ~~May~~ June 26, 2009    DEFENDANT METROPOLITAN LIFE
                                   INSURANCE COMPANY

2

3
                                   By: _____
4

5  Dated: ~~May~~ June 6, 2009     DEFENDANT J.P. MORGAN CHASE BANK,
                                   N.A.
6

7

8                                  By: _____

9

10  APPROVED AS TO FORM:

11  Dated: ~~May~~ June 24, 2009    LAW OFFICES OF PAUL L. REIN

12

13

14                                 By: PAUL L. REIN, Esq.
                                   Attorneys for Plaintiff ANDI MILLARD
15

16  Dated: ~~May~~ 6/24, 2009      GAZZERA, O'GRADY & STEVENS

17

18

19                                 By: BRIAN O'GRADY, Esq.
                                   Attorneys for Defendants LAURA-LOU,
20                                 INC., dba CLARKE'S CHARCOAL BROILER
                                   and METROPOLITAN LIFE INSURANCE
21                                 COMPANY

22

23  Dated: May __, 2009            ADORNO, YOSS, ALVARADO & SMITH

24

25                                 By: THEODORE H. BACON, Esq.
                                   Attorneys for Defendant J.P. MORGAN CHASE
26                                 BANK, N.A.

27

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C07-06014 MMC                    -8-                    S:\CM\Cases\C\Clarke's\Pleadings\consent decree.wpd

1

**ORDER**

2

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

3

4

Dated: June 26, 2009

Honorable MAXINE M. CHESNEY
United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C07-06014 MMC

-9-

S:\CM\Cases\C\Clarke's\Pleading\consent decree.wpd

# Clarke's Charcoal Broiler
615 W. El Camino – Mountain View, CA

## DISABILITY ACCESS EVALUATION

Survey performed by: _____

Jonathan Adler, Principal
ACCESS COMPLIANCE SERVICES
ICC Accessibility Inspector/Plans Examiner #0886919-21
CA Contractor Lic. #707965
(831) 429-4191

Inspection date: 3/6/08

I.     Scope ......................................................................................................... 2

II.    Introduction................................................................................................. 2

III.   Basis For Identifying Inaccessible Features ................................................. 2

IV.    Basis For Determining The Requirement To Correct Inaccessible Features ..... 3

V.     Inventory of Architectural Barriers ............................................................... 4

VI.    Summary Of Findings.................................................................................. 11

VII.   Recommendations....................................................................................... 13

VIII.  Construction History – Access Requirements ............................................... 14

IX.    List of Attachments ..................................................................................... 16

## I. Scope

The following report provides an evaluation of Clarke's Charcoal Broiler regarding compliance with the state and federal requirements concerning accessibility for persons with disabilities. The findings are based on my physical site inspection that was conducted on 3/6/08. I verified my findings by observation and measurements, photographing various public facilities at the site, including the entrances, parking areas, dining areas, and the public restrooms, and by reviewing construction documents at the City of Mountain View planning department.

## II. Introduction

Under both state law (after July 1, 1970) and the federal ADA (after January 26, 1992) newly constructed or altered facilities are required to be accessible to people with disabilities, and thus provide equivalent opportunities to the goods and services that they offer. Also, performing alterations triggers additional requirements to make other features accessible that may not be directly part of the alteration, including but not limited to: parking, an accessible building entrance and route to it, and restrooms that serve the altered area.

A comprehensive discovery of the construction history and building permit records of this facility has not taken place. At this time the obligation to improve accessibility at the facility is based on the ADA Title III obligation that public accommodations remove architectural barriers to disability access when doing so is readily achievable, regardless of when the facility was built or if it has been remodeled. Features that are subject to this obligation are ones that do not meet the current design standards under the ADA, which is called ADAAG. This is called "barrier removal".

Should a later review reveal a history of construction or alterations performed since 1970 that is pertinent to this investigation, Access Compliance Services reserves the right to amend the findings contained in this report to expand the basis of obligations.

The following report contains a chart (See Part VI) that describes the architectural features that do not meet the regulatory standards for disabled access set forth in the federal Americans with Disabilities Act (Title III – 28 CFR Part 36, Appendix A). The chart also lists the pertinent sections of CA State Building Code (2001-Title 24 Part 2 – Volume 1) because, when alterations are performed to remove the existing barriers the improvements must also meet the state standards.

## III. Basis For Identifying Inaccessible Features

• ANSI A117.1-1961 ............................................................................ (1970 to 1981)
American National Standards Institute standards for accessibility, as applied to public accommodations in California pursuant to Govt. Code 4450 and H&S Code 19955

• CA Code of Regulations, Title-24 Part 2, Volume 1 ...................................... (1982 to present)
The California Building Code as applies to public accommodations, pursuant to CA Health & Safety Code 19955

• The Americans with Disabilities Act Title III–28 CFR Part 36, Appendix A............. (1990 to present)
The Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities

# IV. Basis For Determining The Requirement To Correct Inaccessible Features

**1. Violations:** Architectural features that failed to meet the applicable state or federal regulations when they were originally constructed are required to be corrected. This applies to:

a) Newly constructed facilities that were improperly built

b) Alterations to existing facilities that were improperly built, with or without a permit.

c) Path of Travel- Alterations in which an accessible path of travel was not properly provided to the altered area. Under California law since 1982, and under the ADA since 1990, the altered area was required to comply with disabled access standards in addition to another requirement that was also triggered, called *path of travel*.

*Path of travel* requires that the route to the altered area must be made accessible, which includes parking when it is provided, as well as exterior routes, an entrance, interior routes as needed, the restrooms that serve the altered area, and drinking fountains and telephones that serve the altered area. When the cost of providing the path of travel is an *unreasonable hardship*, that is it exceeds 20% of the project's total cost, the access improvements can be limited to that which can be accomplished for that amount (i.e. 20% of the total cost). However, under California law, the path of travel improvements on large projects cannot be capped based on an unreasonable hardship. A large project is one where the cost exceeds an annually adjusted index, or where a series of projects over a three-year period cost more than that threshold.

## 2. Architectural Barriers Under The ADA

Since 1990, the Americans with Disabilities Act, at section 42 USC 12182 (b)(2)(A)(iv) has required that features that do not meet the standards for access (ADAAG), are barriers and must be corrected. This obligation applies to existing facilities regardless of the age of the building or whether any construction and alterations have been done, although special allowances may apply to truly historic buildings. The extent to which the obligation applies is limited to tasks that are "readily achievable". There is no formulaic definition of what meets the standard of "readily achievable". It is determined in part on the "overall financial resources" of the responsible parties. It is beyond the scope of this assignment to make such a determination - - - it is up to the property owner and business operator to do so.

*ADA Title III Sec.36.201 (b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.*

Under the ADA an access barrier is "readily achievable" if the removal is "easily accomplishable and able to be carried out without much difficulty or expense." Factors to be considered when determining whether removing a barrier is "readily achievable" are set out in the ADA §301 (9) [42 USC 12181], which states:

*(9) READILY ACHIEVABLE- The term `readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include--*

*(A) the nature and cost of the action needed under this Act;*

*(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;*

*(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and*

*(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.*

# V. Inventory of Architectural Barriers

| # | ELEMENT | BARRIER | 2001-CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDED |
|---|---------|---------|----------|-----------------|-------|-------------------|-------|--------------|
| | | PARKING | | | | | | |
| A-1 | Parking Signage Enforcement sign | Tow-away signage is not posted — Enforcement signage is not posted in a place that is visible from the accessible parking space or at the driveway entrance to the parking lot. | 1129B.5 | Tow-Away signage must be installed at each entrance to the lot or visible from each parking space. Sign must be min. 17" x 22", with min. 1" tall letters, and state: *"Accessible spaces not displaying distinguishing placards or license plates issued for persons with disabilities may be towed away at owner's expense. Towed vehicles may be reclaimed at ___ or by telephoning ___."* Blank spaces are to be filled in with appropriate information as a permanent part of the sign. | Not Addressed | Not addressed | A-1 | Install tow-away signage at the entrance to the parking lot or at a location clearly visible from the accessible parking space. |
| A-2 | Vehicle Space – Size | Vehicle space is too narrow — Space is only 8'-6" wide, measured between the centerlines of the stripes that mark the accessible parking space | 1129B.4(1) | Min. 9-ft wide x 18-ft. long | 4.6.3 | Min. 8-ft wide | A-2 | Re-stripe the parking space(s) to provide 9-ft width by 18-ft. length. |

| # | ELEMENT | BARRIER | 2001-CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDED |
|---|---|---|---|---|---|---|---|---|
| A-3 | Quantity of Van-Parking Spaces | **Access Aisle is not provided**<br><br>Van-Accessible parking (i.e. with an adjacent 8-ft wide access aisle) is not provided, in fact, no access aisle is provided at all. | 1129B.4(2) | Minimum of one van-space required (but not less than one) per 8 total accessible spaces required. | 4.1.2(5)(b) | Minimum of one van-space required (but not less than one) per 8 total accessible spaces required. | A-3 | Stripe an 8-ft wide access aisle on the passenger side of the vehicle space. Use diagonal stripes that are 36-inch apart<br><br>Within the access aisle, paint the words NO PARKING using minimum 12-inch tall letters. |
| | | **ENTRANCES** | | | | | | |
| B-1 | Door Landing | **The landings are not level**<br><br>There are two public entrances to the restaurant; neither is accessible because they lack level landings on the exterior sides of the doors.<br><br>**North Entrance:** The 5-ft by 5-ft area that is required to slope no more than 2%, contains slopes that are 6.2% at the flattest part, to 24.3% at the steepest part.<br><br>**South Entrance:** The 5-ft by 5-ft area that is required to slope no more than 2%, contains slopes that are 9.3% at the flattest part, to 31.1% at the steepest part. | 1133B.2.4.2 | Maneuvering clearances at doors. Minimum maneuvering clearances at doors shall be as shown in Figure 11B–26A and 11B–26B. The floor or ground area within the required clearances <u>shall be level and clear.</u> | 4.13.6 | Minimum maneuvering clearances at doors that are not automatic or power-assisted shall be as shown in Fig. 25. The floor or ground area within the required clearances <u>shall be level and clear.</u> | <u>North</u><br>B-1a<br>B-1b<br><u>South</u><br>B-1c<br>B-1d | At each entry door, provide a landing that slopes no steeper than 2%.<br>This may be accomplished by building a raised pad that is flush with the door threshold to serve as the landing, and then at each open side of the landing, transitioning back down to the existing pavement at a slope that is less than 5%.<br>Note: Currently, the north entry must be accessible because that is where the accessible parking is located, and the south accessible because it is on the route between the interior of the restaurant and the restroom. The North entry could be left unimproved if accessible parking |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDED |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|--------------|
| | | | | | | | | was relocated to the south side and an accessible route from the sidewalk to that entrance was created by removing the public telephone that blocks it. Directional signage would be needed at the north entrance to direct persons with disabilities to the accessible alternative. However, the existing landing at the north entry with steep drop-offs at the side would remain a potential hazard. |
| | **RESTROOM** | | | | | | | |
| C-1 | Threshold | **Entering the restroom requires climbing up one step;** **The door threshold is 3-7/8-in. high** | 1133B.2.4.1 | The floor or landing may not be more than 1/2 inch lower than the threshold of the doorway. Change in level between 1/4 inch and 1/2 inch must be beveled with a slope no greater than 1 unit vertical to 2 units horizontal (50% slope). Change in level greater than 1/2 inch must be accomplished by means of a ramp. | 4.13.8 | The threshold at doorways may be no higher than 3/4 inch in height for exterior sliding doors and maximum 1/2 inch for other doors. A raised threshold must be beveled at 1:2 or less. | C-1a C-1b | While it would be feasible to construct an accessible entrance to the existing restroom, it would not be practical because the room is too small to be accessible and interior obstructions pose a deterrent to enlarging it. Recommendation: Construct a new, accessible restroom addition to the building. The existing restroom could be converted to kitchen use and entered from the interior. Attachments 01 & 02 |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDED |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|--------------|
| C-2 | Door Width | Entry door is too narrow<br><br>The clear width of the doorway is only 26-5/8 inches. | 1118B.1 | The minimum clear width for single wheelchair passage shall be 32 inches at a point and 36 inches continuously | 4.13.5 | When a door is open 90 degrees, then must be a clear opening width at least 32 inches measured between the face of the door and the door jamb on the opposite side. | C-2 | |
| C-3 | Wheelchair Maneuvering Space | Maneuvering Space is too small<br><br>The clear area for turning around with a wheelchair is approximately 48-inch diameter. | 1115B.7.1.1 | A clear space measured from the floor to a height of 27" above the floor, within the sanitary facility room, of sufficient size to inscribe a circle with a diameter not less than 60", or a clear space 56" by 63" in size. | 4.2.3<br><br>4.22.3 | The space required for a wheelchair to make a 180-degree turn is a clear space of 60" in diameter or a T-shaped space.<br><br>Clear Floor Space. An unobstructed turning space complying with 4.2.3 shall be provided within an accessible toilet room. The clear floor space at fixtures and controls, the accessible route, and the turning space may overlap. | C-3 | See C-1 |
| C-4 | Toilet Location | Toilet Too Close to Wall<br>The center of the toilet is only 11-3/4 inch from the near, flanking wall. | 1115B.7.1 3 | 18"<br>minimum/maximum | Fig. 28 | 18"<br>minimum/maximum | See photo C-3 | See C-1 |
| C-5 | Grab Bars | Required Grab Bars are Not Provided<br><br>There is only one grab bar (two are required) and it is only 18-inch long. | 1115B.8.1 | Side grab bars shall be at least 42" long.<br><br>Grab bars at the back shall not be less than 36" long. | Fig. 29 & 30 | A 42" minimum length grab bar is required to the side of the water closet spaced 12" max. from the back wall and extending a minimum of 54" from the back wall at 33" to 36" height.<br>Side grab bar shall be a min. 54" from the rear wall. | C-5 | See C-1 |

| # | ELEMENT | BARRIER | 2001-CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDED |
|---|---------|---------|----------|-----------------|-------|-------------------|-------|--------------|
| C-6 | Side Transfer Space | No Clear Space Beside the Toilet<br><br>The pedestal lavatory blocks clear space beside the toilet, which is needed to transfer laterally from a wheelchair to the fixture. | 1115B.7.2 | The water closet shall be located in a space which provides a minimum 28-inch-wide (711 mm) clear space from a fixture or a minimum 32-inch-wide (813 mm) clear space from a wall at one side. The other side shall provide 18 inches (457 mm) from the centerline of the water closet to the wall. A minimum 48 inches (1219 mm) of clear space shall be provided in front of the water closet. | | | C-6 | See C-1 |
| C-7 | Lavatory Knee Space | Lavatory lacks knee space<br><br>The pedestal lavatory is supported by a post, which obstructs the required clear area under the lavatory for a wheelchair user's knees and toes. | 1115B.2.1.2.1 | All lavatories that are designated to be accessible shall have a vertical clearance measured from the bottom of the apron or the outside bottom edge of the lavatory of 29". Knee clearance below the lavatory shall extend a minimum of 30" in width by 17" in depth. See Figure 11B-1D. | 4.19.2<br><br>Fig. 31 | Provide a clearance of at least 29" AFF to the bottom of the apron.<br><br>27" high knee clearance, measured at a point 8-inch back from the front face of the fixture,<br><br>Minimum 9-inch high toe clearance shall extend 17-inch back from the front face of the fixture | See photo C-6 | See C-1 |
| C-8 | Water Faucet | Faucet hardware is not accessible.<br><br>Operating the faucets requires a tight grip | 1115B.2.1.2.1 | Faucet controls and operating mechanisms shall be operable with one hand and shall not require tight grasping, pinching or twisting of the wrist. L | 4.19.5 | Lever-operated, push-type, and electronically controlled mechanisms are examples of acceptable designs. | C-8 | See C-1 |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDED |
|---|---|---|---|---|---|---|---|---|
| | | **DINING AREAS** | | | | | | |
| D-1 | Indoor Seating | **Wheelchair seating spaces are not provided indoors**<br><br>No fully accessible seating spaces are provided; three spaces (5% of the total) are required.<br><br>• None of the existing seating are on an accessible 36-inch wide route, and because of the configuration of table support posts, none of the the seating spaces fully provide the required knee space under a table (27-inch high; 30-inch wide; 19-inch deep) | 1104B.5(4)<br><br>1122B | Each dining, banquet and bar area shall have one wheelchair seating space for each 20 seats, with at least one minimum wheelchair seating space per functional area and shall comply with Section 1122B, "Fixed or Built-in Seating, Tables, and Counters<br><br>Wheelchair seating shall be on an accessible route, have a surface that is 28" to 34" high, and provide accessible kneespace under the counter or tabletop, yielding:<br>30" min. width<br>27" min. height<br>19" min. depth | 5.1<br>4.1.3(18)<br>4.32.3<br>4.32.4 | Where fixed tables (or dining counters where food is consumed but there is no service) are provided, at least 5 percent, but not less than one, of the fixed tables (or a portion of the dining counter) shall be on an accessible route, have a surface that is 28" to 34" high, and provide accessible kneespace under the counter or tabletop. | D-1 | Provide three tables that each yield at least one wheelchair seating space. Such a space must provide an area under the tabletop that is minimum 27" High by 30" Wide by 19" Deep, in which the wheelchair seating space is also on a minimum 36-inch wide route.<br><br>Perform the actions described in either **Attachment-03 or 04,** or provide equivalency by another means. |
| D-2 | Outdoor Seating | **Wheelchair seating spaces are not provided outdoors, a separate functional area.**<br><br>No fully accessible seating spaces are provided; three spaces (5% of the total) are required.<br><br>The large tables are not accessible because they have attached bench-seating that blocks any approach to the table by persons w/ wheelchairs. | 1104B.5(4)<br><br>1122B | Each dining, banquet and bar area shall have one wheelchair seating space for each 20 seats, with at least one minimum wheelchair seating space per functional area and shall comply with Section 1122B, "Fixed or Built-in Seating, Tables, and Counters<br><br>Wheelchair seating shall be on an accessible route, have a surface that is 28" to | 5.1<br>4.1.3(18)<br>4.32.3<br>4.32.4 | Where fixed tables (or dining counters where food is consumed but there is no service) are provided, at least 5 percent, but not less than one, of the fixed tables (or a portion of the dining counter) shall be on an accessible route, have a surface that is 28" to 34" high, and provide accessible kneespace under the counter or tabletop. | D-2a<br>D-2b<br>D-2c<br>D-2d<br>D-2e | In level areas of the outdoor patio, provide three tables that each yield at least one wheelchair seating space (27" High, 30" Wide 19" Deep) in which the wheelchair space is also on a minimum 36-inch wide route.<br><br>Note: Tables that can provide the minimum required space are:<br><br>• 42-inch diameter tabletop that is |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDED |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|--------------|
| | | The other four styles of tables are not accessible because in various ways, each table has some kind of under-counter support structure that blocks the required knee and toe space. | | 34" high, and provide accessible kneespace under the counter or tabletop, yielding: 30" min. width 27" min. height 19" min. depth | | | | typically supported by a 4-inch diameter post, in which the base is of a low-profile.  • 36-inch square tabletop that is supported by a table leg in each corner, that allows a 30-inch wide opening between the legs. |
| D-3 | Sales Transaction Station | **Counter Is Too High** Counter at the cash register is 42" high | 1122B.4 | Height of Work Surfaces.  The top of a retail sales counter shall be 28 inches to 34 inches high and at least 36 inches long. | 7.2(1) | An accessible section of counter is required that is no higher than 36-in. and at least 36-in. long | D-3 | Replace the unit or lower the counter to maximum 34-inch high |
| D-4 | Self-Serve Condiments | **Counter Is Too High** Reaching the condiments requires reaching more than 10 inch horizontally over a 38-inch high obstruction (i.e. the lower counter) | 1118B.6 Fig 11B-5D(b) | Side reach over an obstruction that is higher than 34-inch is prohibited. | 4.2.6 and Figure 6(c) | The maximum allowable reach is 46-inch high when side approach is possible but it is necessary to reach horizontally 10-inch to 24" inch over an obstruction | D-4 | Replace the unit or lower it so that the lower shelf is maximum 34-in. high. |

## VI. Summary of Findings

A-1 Parking Signage not Provided
Enforcement signage (i.e. tow-away warning) is not posted
*Tow-Away signage must be installed at each entrance to the lot or visible from each parking space.*

A-2 Vehicle Space – Too Narrow
The parking space that is reserved for persons with disabilities is only 8'-6" wide
*Minimum 9-ft width is required*

A-3 Van-accessible Access Aisle – Not Provided
Access Aisle is not provided
*An 8-ft wide access aisle (i.e. diagonally striped unloading zone) is required adjacent to the passenger side of the vehicle.*

B-1 Restaurant Entrances - Door Landings Too Steep
The door landings outside of both entrances slope 6% to 9% directly in front of the doors with side-slopes as steep as 31%.
*Minimum 5-ft by 5-ft level door landing is required*

C-1 Restroom Door Threshold – Too High
Entering the restroom requires climbing up a 4-inch high step;
*The floor or landing may not be more than 1/2 inch lower than the threshold of the doorway.*

C-2 Door Width – Too Narrow
Entry door provides only a 26-5/8 inch wide opening
*Minimum 32-inch wide clear opening is required*

C-3 Wheelchair Maneuvering Space – Too Small
Maneuvering space within the restroom is only 48 inches diameter
*A clear space measured from the floor to a height of 27" above the floor, which is minimum 60-inch diameter is required*

C-4 Toilet Location – Too Close to Wall
The toilet is centered 12-inch from the near wall.
*Toilet must be centered 18 inch from the flanking wall*

C-5 Grab Bars – Not Provided
The only grab bar that is provided is a small 18-inch long bar.
*42-inch long side grab bar and a 36-inch rear grab bar are required*

C-6 Side Transfer Space – Not Provided
The pedestal lavatory blocks clear space beside the toilet, which is needed to transfer laterally from a wheelchair to the fixture.
*Minimum 28-inch wide space between the toilet and a lavatory.*

C-7 Lavatory Knee Space – Not Provided
The pedestal lavatory is supported by a post, which obstructs the required clear area under the lavatory
29-inch high clearance at the front face; 27- inch high at a point 8-inch back from the front; and 9-inch high toespace extending 17" in depth.

C-8 Water Faucet – Not Accessible Design
Operating the faucets requires a tight grip
Faucet controls and operating mechanisms shall not require tight grasping, pinching or twisting of the wrist.

D-1 Accessible Indoor Seating– Not Provided
Wheelchair seating spaces are not provided indoors
Three wheelchair-seating spaces that are on an accessible route are required inside of the restaurant

D-2    Accessible Outdoor Seating
Wheelchair seating spaces are not provided outdoors,
Three wheelchair-seating spaces that are on an accessible route are required in the outdoor eating area.

D-3 Sales Transaction Station
The 42-inch high sales counter is too high.
An accessible section of counter is required that is no higher than 34-in. and at least 36-in. long.

D4 Self-Serve Condiments
Reaching the condiments requires reaching over a 38-inch high obstruction
Side reach over an obstruction that is higher than 34-inch is prohibited.

## VII. Recommendations

**A-1 ...................Parking Signage**
Post Enforcement signage (i.e. tow-away warning) at the driveway entrance.

**A-2 ...................Vehicle Space**
Re-stripe the accessible parking space to be 9-ft wide.

**A-3 ...................Van-Accessible Access Aisle**
Stripe an 8-ft wide unloading zone using diagonal stripes that are 36-inch apart and paint the words "NO PARKING" within the aisle using 12-inch high letters.

**B-1 ...................Restaurant Entry Door Landings**
Provide raised, 5-ft by 5-ft landings that slope no more than 2%, and transition back down to the pavement level using slopes that are less than 5%.

**C1 thru C8 ......Restroom**
Build an accessible restroom addition, per the schematic plans in Attachments 01 or 02, or provide an equivalent design.

**D-1 ..................Accessible Indoor Seating**
Provide three accessible wheelchair-seating spaces inside the restaurant, per Attachments 03 or 04, or provide an equivalent design.

**D-2 ..................Accessible Outdoor Seating**
Provide three accessible wheelchair-seating spaces outside the restaurant by replacing three tables with ones that provide required knee space under the tabletop.

**D-3 ..................Sales Transaction Station**
Replace the unit or lower the counter to maximum 34-inches above the floor.

**D4 ...................Self-Serve Condiments**
Replace the self-serve unit, or lower the existing one so that the lower counter section is maximum 34-inches above the floor.

## VIII. Construction History - Access Requirements

The City of Mountain View planning department holds construction documents for a building project at the restaurant that was performed in 1984-85 (Permit application 250-84-PC). The permit application describes the scope of work as building two dining patios to add 612 sq. ft to the existing 798 sq. ft.

**1) AREA OF ALTERATION:** Under the 1984 California State Building Code, this project was an alteration for which conformance with the applicable standards was required. The additions were not built in conformance with the 1984 requirements:

a) **Entrances:** The small, steeply sloped door landings did not comply.

*(1984) 2-611(d)(1) Group A Occupancies-Dining, Banquet and Bar Facilities. Access to these facilities shall be provided at primary entrances*

*(1984) 2-3303(i)(2) Level Floor or Landing:*
*(A) There shall be a level and clear area on each side of an exit door. The level area shall have a length of at least 60-inch in the direction of door swing*
*(C) The width of the level area on the side to which the door swings shall extend 24-inch past the strike edge of the door for exterior doors.*

b) **Seating:** None of the seating met the requirements

*(1984) 2-611(d)(3) Seating. Each dining, banquet and bar area shall have one wheelchair seating space for each twenty seats, with at least one minimum wheelchair seating space per each functional area. Such seating shall be designed and arranged to permit use by wheelchair occupants. Access to such seating space shall be provided with main aisles not less than 36-inch (914.4 mm) in clear width.*

**2) PATH OF TRAVEL:** Furthermore, other features at the facility that served the newly added, or altered areas were also required to be made accessible, and they were not. The CA Building Code (1984 – Section 2-105(b)11B(4)) required that an accessible "path of travel" be provided to the altered areas. The path of travel obligation included requirements for an accessible route to the alteration, which included parking, and also that the restrooms that served the altered area had to be made accessible.

a) **Parking:** An access aisle (unloading area) was not provided next to the parking space that is reserved for persons with disabilities.

*(1984) 2-7102(b), Parking Space Size. If only one space is provided, it shall be 14 ft wide and outlined to provide a 9 ft parking area and a 5 ft loading and unloading area.*

b) **Restroom:** The restroom was not made accessible in any way. For example, a maximum 1/2" change of level was required at the door threshold (4-inch high was provided), as was a minimum 36-inch wide exit door (28-inch was provided), and also a 28-inch wide space next to the toilet (4-inch wide was provided).

*(1984) 2-3303(i)(1)(A) Thresholds. The floor or landing shall be not more than 1/2 inch lower than the threshold of the doorway.*

*(1984) 2-3303(e)(1) Door size. Every required exit doorway shall be of a size as to permit the installation of a door not les than 3 ft in width.*

*(1984) 2-1711(g) Single Accommodation Toilet Facilities. The water closet shall be located in a space which provides a 28-in. wide clear space from a fixture.*

Clarke's Charcoal Broiler – Disability Access Evaluation          Access Compliance Services          3/11/08          p. 14

## VIII. List of Attachments

Attachment-01   Restroom schematic
Attachment-02   Restroom schematic
Attachment-03   Seating – modify existing
Attachment-04   Seating – replace tables in one room



**Attachment-01**

Storage

Existing
Restroom

12"

60"

48"

7'-4"

18"

6'-10"



**Attachment-02**

Storaage

Existing
Restroom

12"

48"

7'-4"

18"    28"    18"

7'-4"



North Dining Room Shown
(Not to Scale)

**Attachment-03**
*Modifying the Existing Plan*

Seating space at the open-end of Table-A is almost compliant, and it would be usable for wheelchair seating if a 36-inch wide route were provided to the table.

<u>Recommendation:</u> Perform steps 1 and 2 in either the North or South Dining room, in order to provide a minimum of 3 total wheelchair seating spaces:

**Step 1**: Modify support posts under table B and table F, in order to create knee space under the tabletop that is minimum 27" high, 30" wide, and 19" deep.

**Step 2:** Remove table G, to provide an accessible route to tables A, B, and F.

<u>South Dining Room Shown</u>
(Not to Scale)

**Attachment-04**
*All booths and tables replaced*



<u>Recommendation:</u> Perform steps 1 and 2 in either the North or South Dining room, in order to provide a  minimum of 3 total wheelchair seating spaces:

**Step 1**: Replace existing booths and tables with 32" and 42" round tables, as shown.

**Step 2:** Wheelchair seating spaces can be provided at the 3 locations shown with a striped chair symbol, if the space under the table is minimum 27" high and 19" deep.